**Fredrick KING, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–983A294.**

Court of Appeals of Indiana, Fourth District.

Oct. 31, 1984.

Frank E. Spencer, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaefer Good, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

Fredrick King was convicted of attempting to receive stolen property. He appeals his conviction on three grounds:

(1) the evidence was insufficient to support his conviction;

(2) the jury verdict was defective; and

(3) the verdict of guilty was contrary to law because the items involved were not in fact stolen.

We remand this cause to the trial court to correct its judgment to show appellant was convicted of Count III of the indictment rather than Count I. On all other issues the trial court's judgment is affirmed.

This case arose from two sting operations conducted by the Marion County Police Department. After completing the sting known as Woodie's Knot Hole in which undercover police officers purchased stolen items from thieves, the police were left with a warehouse full of unclaimed stolen merchandise. The county prosecutor suggested this property could be put to good use by initiating a reverse sting in which undercover police officers would attempt to sell the property to shop owners in order to discover merchants in the area who were amenable to trading in stolen items.

Apparently, either business was good and the warehouse stock was depleted, or the merchandise remaining was not the type that would appeal to particular shop owners. Whatever the reasons, the police purchased additional items suitable for fencing, including four place settings of silverware and two gold chain necklaces, the items involved in the present case.

Undercover police officers Patterson and Jorman visited the Hoosier Coin Shop on two occasions and dealt with Appellant King, the store's manager. On their first visit, November 23, 1981, the officers sold a four-piece place setting of silverware to King for $13. The conversation, which was tape recorded, went as follows:

Patterson: Yeah, how you doin? ... Got some silverware ... wonder if you could check it out ... see if it's worth anything...

King: Is that a set? ...

Patterson: Oh, I don't know ... bullshit, I can't see.

King: ... Can you hold it? ...

Patterson: Yes.

King: ... Oh, that's the reason, it's premium to begin with. You've got twenty-six dollars there.

Patterson: For all of it?

King: Uh, huh ... I won't tell you what it was worth in 1980.

Patterson: Yeah, it's gone down some, huh?

King: It would make you feel sick.

Patterson: Oh, really? ... I might be able to get a whole set of it then. *This shit is a little hot. You probably want to melt this shit down.*

King: Yeah, get it ready to go ... no problem.

Patterson: Okay.

King: ... It's not even a favorite pattern.

Patterson: It's not?

King: Yeah, the real fancy pattern brings a little better premium for it.

Patterson: Okay man, well, can I sell you one? I want to see how much I can get for the rest of the stuff, and if I don't do any better, I'll bring the rest of the set back. I've got about six more, but you know, you kinda shop around and see what you can get for'em.

King: Okay.

Patterson: Okay, well, can you take one of 'em off of us, ... need a little cash...

The second transaction involving two gold necklaces took place on December 10, 1981, with a similar conversation in which Officer Patterson referred to the necklaces as being "a little hot." King was charged with two counts of attempting to receive stolen property. The jury convicted him only of the count relating to the first transaction, that of November 23.

■ King argues that this evidence was insufficient to support his conviction. When reviewing a claim of insufficiency of the evidence we will look only to the evidence most favorable to the State. *Williamson v. State,* (1982) Ind., 436 N.E.2d 90. If there is substantial evidence of probative value to support every material element of the crime beyond a reasonable doubt, the verdict will not be disturbed. *Johnson v. State,* (1980) 273 Ind. 1, 401 N.E.2d 674.

The evidence in this case is not in conflict. The only issue is whether King's intent to knowingly or intentionally receive stolen property could be inferred from his purchase of silverware described by the officer as "a little hot."

■ We believe the jury could reasonably infer that King knew the items were stolen when the officer stated they were "hot." The word "hot" is a commonly used term for "stolen." Although there is a possibility that King misunderstood or did not hear the words "a little hot," as long as the jury could reasonably infer he heard and understood, appellant's conviction must stand. The state is not required to disprove every reasonable possibility of innocence. *See Biggerstaff v. State,* (1982) Ind., 432 N.E.2d 34.

■ King also claims the guilty verdict was contrary to law because the items received as "stolen property" were not in fact stolen, but were owned by the Marion County Police Department.

Appellant correctly interprets the statute defining the crime of receiving stolen property which states: "A person who knowingly or intentionally receives, retains, or disposes of the property of another person

*that has been the subject of theft* commits receiving stolen property." IND.CODE 35–43–4–2(b) (1982) (emphasis added). The state could not prove an essential element of the crime, that the property was stolen. King, however, was charged with attempting to receive stolen property, which requires proof only of his intent and that his conduct constituted a substantial step towards commission of the crime. IC 35–41–5–1. Furthermore, subsection (b) of the attempt statute specifically rejects the defense of impossibility which defendant attempts to raise: "It is no defense that, because of a misapprehension of the circumstances, it would have been impossible for the accused person to commit the crime attempted." *Id.* As our supreme court noted in *Zickefoose v. State,* (1979) 270 Ind. 618, 388 N.E.2d 507:

> It is not necessary that there be a present ability to complete the crime, nor is it necessary that the crime be factually possible. When the defendant has done all that he believes necessary to cause the particular result, regardless of what is actually possible under existing circumstances, he has committed an attempt. The liability of the defendant turns on his purpose as manifested through his conduct. If the defendant's conduct, in light of all the relevant facts involved, constitutes a substantial step toward the commission of the crime and is done with the necessary specific intent, then the defendant has committed an attempt.

*Id.* at 510; *see also State v. Gillespie,* (1981) Ind.App., 428 N.E.2d 1338. Consequently, the fact that the items were not actually stolen is unimportant as long as the jury found that King believed them to be stolen. In addition, King's purchase of the items constituted a substantial step towards commission of the crime of receiving stolen property.

██ The dissent expresses the fear that our failure to recognize legal impossibility as a defense will lead to "thought control." Such a fear is unfounded. Merely having the intent to commit a crime is not a criminal offense. Our attempt statute requires proof of both intent and conduct which constitutes a substantial step towards the commission of the crime. Whether particular conduct comprises a substantial step must be determined on a case by case basis depending upon the totality of the circumstances. A person's intent and conduct is a more reliable indication of culpability than the hazy distinction between factual and legal impossibility, as our legislature has recognized by rejecting the impossibility defense in I.C. 35–41–5–1(b).

Finally, appellant claims he is entitled to relief because the jury verdict was defective. Apparently, an error was made in the verdict forms delivered to the jury. The indictment charged the incidents of November 23 and December 10 as Counts III and I, respectively. On the verdict forms the count numbers were reversed with the November 23 transaction listed as Count I and the December 10 transaction listed as Count III. The jury returned a guilty verdict form labeled Count I, but which referred to the date of the offense as November 23.

 It is well established that a verdict will not be considered defective unless it is so uncertain that no judgment can be rendered thereon.[1] *Rowan v. State,* (1982) Ind., 431 N.E.2d 805. Although the count numbers were reversed, the reference to the November 23 date on the facts of this case indicates the jury intended to convict King of the incident involving the silverware purchase. We can not find that the verdict was defective.

The trial court corrected the verdict when it was first returned and stated King was found guilty on Count III. At the

---

**1.** We note that no mention was made of this alleged defect by King either when the verdict was returned or in his motion to correct error. Normally, defense counsel has a duty to raise a question regarding a verdict alleged to be defec-

tive before the jury is discharged. *Grimm v. State,* (1980) 273 Ind. 21, 401 N.E.2d 686. Nevertheless, we have examined the issue on the merits.

sentencing hearing, however, the court repeated the verdict form error and sentenced King on Count I. As a result, we must remand this case to the trial court with instructions to correct its judgment to reflect that sentence was pronounced on Count III.

In all other matters the trial court is affirmed.

MILLER, P.J., concurs.

CONOVER, J., dissents with opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. The jewelry King purchased in the reverse sting operation was not stolen, it had been purchased by the Indianapolis Police Department. Thus, it was legally impossible to convict King of receiving stolen property, as the majority notes. The net result? King was found guilty of attempting to commit a crime it was legally impossible to commit.

While it is true the attempt statute as to impossibility reads:

(b) it is no defense that, because of a misapprehension of the circumstances, it would have been impossible for the accused person to commit the crime attempted[,]

IND.CODE 35–41–5–1(b), I believe a careful reading of this statute indicates the legislature intended subsection (b) to apply only to cases of "factual" not "legal" impossibility.

Under the statute, the crime of attempt occurs when a person acting with appropriate culpability takes a "substantial step toward commission of the *crime*," and the attempt is classified as a "felony or a misdemeanor of the same class as the *crime attempted*", cf., IC 35–41–5–1(a). King

cannot be guilty of attempt here because it was legally impossible to commit theft, receiving stolen goods. If he cannot commit the crime contemplated, it follows, his attempt to commit such crime can be classified neither as a felony nor a misdemeanor, thus his attempt cannot be classified as a crime.

My reading of Justice Hunter's opinion in *Zickefoose v. State*, (1979) 270 Ind. 618, 388 N.E.2d 507 supports the position I take in this dissent, I believe. Justice Hunter said:

It is not necessary that there be a present ability to complete the crime, nor is it necessary that the crime be *factually* possible. When the defendant has done all that he believes necessary to cause the particular result, regardless of what is actually possible under existing circumstances he has committed an attempt.... (Emphasis supplied.)

*Zickefoose*, 388 N.E.2d at 510. *Zickefoose* dealt with factual not legal impossibility. Thus, when a pick-pocket puts his hand into an empty pocket with intent to steal, he is guilty of attempt, even though it was factually impossible to commit the crime. However, he is not guilty of attempt if he puts his hand into a public trash basket with like intent because it is legally impossible to steal that which has been abandoned.

I recognize the position I take is at variance not only with the majority but with the result reached in *State v. Gillespie*, (1981) Ind.App., 428 N.E.2d 1338 and cases there cited. However, I believe the legislature intended only to encompass within the limits of IC 35–41–5–1(b) factual not legal impossibility. The potential for future mischief seems almost boundless unless that distinction is made.[1] If we do not do so, we

---

1. Aldisert, Circuit Judge, discussed the same concern, saying

Indeed, though it is not before us, we do evidence some concern that the proposed changes in the federal criminal code seem to fashion a new crime where the critical element to be proved is *mens rea simpliciter*. We detect the total lack of objective guidelines in the presentation of such proof or a defense. While *mens rea* is certainly within one's con-

trol it is not subject to direct proof; it is proved by circumstantial evidence only. More important, it is not subject to direct refutation. It is the subject of inference and speculation. We perceive the danger of potential abuse where the circumstances admit to very little objective measurement. More important, we are unwilling as a court to legislate by judicial fiat a crime consistent only with thought processes, as this is remi-

will take a long step down the road to thought control.

For those reasons, I respectfully dissent.

niscent of the German law of the Nazi period "that anything is punishable if it is deserving of punishment according 'to the fundamental conceptions of a penal law and sound popular feeling.'" H.L.A. Hart, Law, Liberty and Morality, 12 (1963).

*U.S. v. Berrigan,* (1973) 482 F.2d 171, 189, n. 39.