**Charles McGILL, Jr., Plaintiff,**

v.

**MOUNTAINSIDE POLICE DEPT., et al., Defendants.**

Civ. A. No. 87–4197.

United States District Court,
D. New Jersey.

May 10, 1989.

Jack N. Frost, Plainfield, N.J., for plaintiff.

Lindsey H. Taylor, Kalb, Friedman, Siegelbaum & Moran, Roseland, N.J., for defendants.

## OPINION

WOLIN, District Judge.

In this civil rights action, defendants move for partial summary judgment and for attorney's fees pursuant to 42 U.S.C. § 1988. Plaintiff cross-moves for partial summary judgment. For the reasons sets forth below, summary judgment will be entered in favor of defendants on the Fourth, Fifth, Sixth, Tenth, Eleventh and Twelfth Counts of plaintiff's Complaint. Summary judgment is denied as to the Second, Third and Fourteenth Counts of the Complaint. Plaintiff's motion for partial summary judgment is denied in its entirety. In addition, defendant's motion for attorney's fees is denied without prejudice as premature.

## I. BACKGROUND

This case arises out of a sequence of events that began when plaintiff Charles McGill, Jr. was arrested by officers of the Mountainside and Springfield police departments the night of October 3, 1986. On that night, at approximately 10:30 p.m., the Mountainside police apparently received a call from the Watchung police that a vehicle was traveling east on Route 22 at a high rate of speed. Mountainside police officer John Olock spotted the car and eventually stopped the vehicle. Officers Todd Turner and John Garrett of the Mountainside police and Officers Jeff Vreeland and Paul Caron of the Springfield police responded to Officer Olock's call for backup and were also present at the scene.

What happened when McGill was pulled over remains in dispute, and neither side moves for summary judgment on this precise issue. Plaintiff claims he merely asked what the problem was whereupon he was pulled from his car and beaten by the various officers. The police claim plaintiff verbally abused them, and was then placed under arrest, all the while kicking, punching and screaming at the police. Defendants also imply that plaintiff was intoxicated, although no D.W.I. charges were filed against plaintiff.

Whatever the cause of the scuffle, plaintiff was placed under arrest and taken to Mountainside police headquarters, where he was placed in a holding cell. McGill was charged with assaulting a police officer and resisting arrest, and cited for speeding and improper lane change. The assault charge was later downgraded to simple assault.

While in the holding cell, McGill apparently vomited. Plaintiff also claims he had difficulty breathing and repeatedly asked to be taken to the hospital. The next morning plaintiff was taken to Overlook Hospital. He was later released from Overlook

Hospital since his bail was posted while he was in the hospital.

After being released from the hospital, plaintiff contemplated but did not file assault charges against the officers he claims assaulted him. Plaintiff did request that the Mountainside police do an internal affairs investigation into the arrest. On October 14, 1986, Jack Frost, Esq. served upon the Mountainside police a Subpoena Duces Tecum for a Civil Action for "All radio transmissions, tapes, and records, dispatch cards" pertaining to McGill's arrest. The Mountainside police believed the request to be improperly made and did not turn over the material. A few months later the tape of the radio transmissions was erased; however, there is no evidence this was done in bad faith.

Detective Jerome Rice of the Mountainside police was assigned to do the internal affairs investigation of the events surrounding plaintiff's arrest. He requested that McGill come in to headquarters to give a statement. McGill was reluctant to do this but was informed that his statement was required in order for Detective Rice to investigate the matter. Finally on June 23, 1987, McGill and his attorney went to police headquarters, and McGill gave a taped interview with Detectives Rice and Senanick.

On October 22, 1987, McGill was tried and convicted in Westfield Municipal Court of simple assault, resisting arrest, speeding and unsafe lane change. The trial court ruled that the taking of McGill's statement was not a violation of his Fifth Amendment rights and that the October 14, 1986 subpoena from McGill's attorney was not a proper discovery request. These holdings were affirmed on appeal by a letter opinion dated June 6, 1988 by Honorable Edward W. McGrath, J.S.C.

On October 19, 1987, McGill filed a 14 count civil complaint in this Court. Among other things, McGill charges that the Mountainside and Springfield police officers assaulted and battered him, and used excessive force to arrest plaintiff, that Mountainside police officers Sgt. James Debbie and Sgt. R. Della Serra refused to get medical treatment for plaintiff, that he was falsely arrested, that the Mountainside police, Sgt. Rice and Det. Senanick violated his Fifth Amendment rights by refusing to conduct an internal affairs investigation unless plaintiff gave a statement, and that his constitutional rights were violated by the failure of the Mountainside police to respond to the October 14, 1986 subpoena. Plaintiff also claims that he was arrested for obstruction of justice merely because he refused to answer questions, thus violating plaintiff's Fourth and Fifth Amendment rights. Finally, plaintiff alleges that the relevant police departments and municipalities are liable for intentional or negligent failure to adequately train, instruct and supervise their police officers.

Defendants now move for partial summary judgment dismissing plaintiff's claims that Officers Debbie and Della Serra violated his civil rights by failing to provide medical treatment, that the defendants falsely arrested plaintiff and arrested him without probable cause in violation of his constitutional rights, that Detectives Rice and Senanick violated plaintiff's Fifth Amendment right against self-incrimination, and that Chief Alder and Lt. Mazur violated plaintiff's constitutional rights by failing to preserve the tape of radio conversations on the night of plaintiff's arrest. Defendants also move to dismiss all claims against the municipal defendants. In addition, defendants move for attorneys' fees pursuant to 42 U.S.C. § 1988 because the aforesaid claims are frivolous within the meaning of that statute. Plaintiff cross-moves for summary judgment on the issues of the constitutionality of the Mountainside police practice to require a statement before beginning an internal affairs investigation, the failure to preserve the tape of radio conversations, and the arrest of McGill for failure to respond to police questioning.

## II. DISCUSSION

As a preliminary matter, it should be noted that the underlying cause for the altercation between plaintiff and the police officers remains in dispute, as does the sequence of events surrounding plaintiff's

arrest. Therefore, Counts One, Seven, Eight, Nine and Thirteen of plaintiff's Complaint, all of which relate to plaintiff's claim he was assaulted by the police officers, are not ripe for summary judgment and, in fact, neither side moves for summary judgment on these counts. There remain, however, a number of issues on which both defendants and plaintiff do move for summary judgment.

## A. *Plaintiff's False Arrest Claims*

■ In the Third Count of his Complaint, plaintiff alleges that defendant Olock falsely arrested the plaintiff for obstruction of administration of justice because of plaintiff's refusal to answer questions. In the Fourteenth Count of the Complaint, plaintiff alleges a general claim of false arrest against all the police officers involved. Defendants contend that plaintiff was not arrested merely for failure to answer questions, and that plaintiff's conviction for the offenses charged acts as an absolute bar to a false arrest claim. Although defendants' argument as to the effect of a conviction on a § 1983 action for false arrest does have support in certain circuits, *see, e.g., Cameron v. Fogarty*, 806 F.2d 380 (2d Cir. 1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), the Third Circuit has strongly suggested that it does not approve of such an absolute bar. In *Rose v. Bartle*, 871 F.2d 331 (3d Cir.1989), the Third Circuit has recently stated:

It appears that *this* Court has never indicated that favorable termination is a requisite element of a section 1983 false arrest claim, but rather has suggested to the contrary. *See, e.g., Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir.1978).... Furthermore, whatever the prevailing common law rule, we have some doubts as to the policy determinations underlying *Cameron*.

*Rose*, 871 F.2d at 351 (emphasis in original). The Fifth Circuit has also apparently determined that conviction is not an absolute bar to a § 1983 action for false arrest. *Brown v. Edwards*, 721 F.2d 1442, 1448–49 n. 8 (5th Cir.1984).

Given the Third Circuit's statements in *Rose*, this Court is not prepared to find that the conviction of McGill is an absolute defense for the police officers against McGill's general false arrest claims. Thus, Count Fourteen of the Complaint should not be subject to summary judgment.

■ As for Count Three, the Count finds material issues of fact remain as to why plaintiff was first placed under arrest. If, as defendants claim, plaintiff responded with abusive language to questions lawfully asked by the police, then the arrest of plaintiff would have been proper. *State v. Wanczyk*, 201 N.J.Super. 258, 493 A.2d 6 (App.Div.1985). If, on the other hand, plaintiff was pulled out of his car and arrested because he did not answer the questions posed, such an arrest would have been improper. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Because material issues of fact exist regarding which version of events is closest to reality, summary judgment on plaintiff's Third Count must also be denied at this time.

## B. *Plaintiff's Claim That the Mountainside Internal Affairs Procedure Violated His Fifth Amendment Rights*

The Fourth and Fifth Counts of plaintiff's Complaint allege that plaintiff's Fifth Amendment rights were violated by Detectives Rice and Senanick and the Mountainside Police Department through the defendants' practice to require a statement before launching an internal affairs investigation into assault charges made against Mountainside Police officers. Plaintiff claims this practice forces a person facing criminal charges to choose between waiving their Fifth Amendment privilege against self-incrimination to enable an internal affairs investigation to go forward and remaining silent, thereby foreclosing the opportunity to see the police department investigate allegations of abuse.

■ Although plaintiff may be correct in his contention that the constitutionality of the Mountainside Police internal affairs procedure is a novel question, there is no shortage of case law on the subject of how

far government can go in burdening an individual's privilege against self-incrimination. The Supreme Court has established parameters within which cases involving the burdening of Fifth Amendment rights will fall. One parameter is marked by a line of cases in which the Court has refused to allow a state to impose automatic economic sanctions for the invocation of the Fifth Amendment. In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), a state statute provided for the automatic forfeiture of a state office if an official asserted his Fifth Amendment privilege in any state investigation of criminal wrongdoing. The Supreme Court ruled that the testimony of a policeman could not be admitted against him in a criminal trial because it had been unconstitutionally coerced by virtue of the State's threat to discharge him if he invoked his right to remain silent.

In *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), the Court held that a state could not subject a political party officer to the automatic loss of his office if he exercised his Fifth Amendment privilege or refusal to waive immunity. Similarly, in *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), the Supreme Court held that a state could not constitutionally terminate all government contracts to which an individual is a party and suspend for five years that individual's opportunity to enter into contracts with the government upon his refusal to testify in a state investigation of potential criminal wrongdoing.

The *Garrity–Lefkowitz* line of cases thus establishes that a state is not permitted to impose automatic economic penalties on civil litigants who choose to assert their right against self-incrimination when the possibility of a subsequent criminal proceeding exists.

In contrast to the *Garrity–Lefkowitz* line of cases, the Supreme Court has allowed, in civil actions, the government to burden an individual's Fifth Amendment privilege by using a litigant's silence against him if other evidence is presented as well. In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), a state prisoner was charged by prison officials with inciting a disturbance, an action that could subject him to a later criminal prosecution. The Court held the state could warn the prisoner that his decision to remain silent could be used against him in the prison disciplinary hearing.

█ The most telling characteristic of a state practice that constitutes an impermissible burden on the Fifth Amendment would, therefore, seem to be whether the practice levies something akin to an automatic economic penalty on an individual who chooses to remain silent. Plainly, the Mountainside Police practice of requiring a statement before undertaking an internal affairs investigation does not pose such an automatic penalty on either the economic well-being or constitutional rights of an individual contemplating giving such a statement.

The Mountainside practice does not automatically foreclose an individual's opportunity to see that any alleged abuses go unpunished. An individual can always bring a later civil action, as plaintiff has done in this case. Moreover, given a relatively speedy resolution of outstanding criminal charges, an individual can choose to give a statement for internal affairs purposes after he is no longer faced with self-incrimination problems.

Of course, even if plaintiff had decided to remain silent and this silence prevented an internal affairs investigation from going forward, there is no support for the proposition that an individual has a constitutional right to such an investigation of police misconduct. See *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

To be sure, the practice of the Mountainside Police to require a statement from someone requesting an internal affairs investigation, even if that individual is still facing criminal charges, may not be the fairest or most equitable way to handle such matters. However, the practice did not pose an unconstitutional burden on the plaintiff's Fifth Amendment right against self-incrimination. Therefore, the Court will grant summary judgment dismissing

the Fourth and Fifth Counts of plaintiff's Complaint.

### C. *Plaintiff's Claim for Failure to Receive Medical Treatment*

In the second count of his Complaint, plaintiff charges that defendants Sgt. James Debbie, Shift Commander Sgt. R. Della Serra, the officer on duty at Mountainside Police Department, as well as a John Doe defendant, refused to get medical treatment for the plaintiff while he was detained at the police station, even though plaintiff complained of difficulty breathing and had vomited in his cell. Defendants deny that any officers were deliberately indifferent to plaintiff's medical needs while he was detained at Mountainside Police Headquarters.

The Supreme Court has held that failure to provide adequate medical treatment to prisoners is a violation of the Eighth Amendment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In cases involving pretrial detainees, such as plaintiff, any constitutional protections derive from the Due Process Clause of the Fourteenth Amendment rather than from the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, with regard to the medical needs of pretrial detainees, the Supreme Court has stated: "The due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

■ Although some courts have found that pretrial detainees must be afforded a higher degree of medical care than merely the absence of deliberate indifference, *see, e.g., Cupit v. Jones*, 835 F.2d 82 (5th Cir. 1987) (pretrial detainees entitled to reasonable medical care unless the failure to supply that care is related to a legitimate government objective), the Third Circuit has consistently applied the deliberate indifference standard to claims by pretrial

detainees of inadequate medical care. *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3d Cir.1979); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir.1976).

■ The deliberate indifference test for liability is two-pronged: "It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir.1978), quoted in *Inmates of Allegheny County Jail*, 612 F.2d at 762. Searching the record of this case, the Court finds material issues of fact remain as to whether plaintiff's medical needs were serious and whether the police officers displayed deliberate indifference.

Defendants dispute the seriousness of plaintiff's injuries. They question whether plaintiff ever vomited blood, and argue that even if this occurred it was after the named defendants were off duty. However, the report of Officer Olock reveals that plaintiff had vomited by the time plaintiff's father-in-law, Det. Donald Harper, came to headquarters. Beyond this, the Court has not been presented with adequate evidence to pinpoint the time of plaintiff's medical problems. As for seriousness of injuries, a fact issue exists as to when plaintiff began to complain of breathing difficulties. Finally, the question of deliberate indifference largely turns on unresolved issues—whether defendants did indeed beat up plaintiff and then both ignored his complaints of breathing difficulties and his vomiting of blood. Thus, summary judgment cannot be granted on the Second Count of plaintiff's complaint.

### D. *The Defendants' Failure to Preserve the Tape of Radio Transmissions*

■ The Sixth Count of plaintiff's Complaint alleges that the failure of defendants Sgt. Rice, Chief William Adler, and Lt. Mazer to preserve a tape of dispatches recorded on the night of plaintiff's arrest, although subpoenaed by plaintiff's attorney, violated plaintiff's constitutional rights. The parties cross-move for summary judgment on this issue.

Plaintiff apparently raised this issue in both the trial and appeal of his criminal conviction. Plaintiff's counsel somewhat disingenuously argues that Judge Edward McGrath of the New Jersey Superior Court, Appellate Division did not consider the issue of plaintiff's subpoena of the dispatch tape. However, excerpts of Judge McGrath's opinion demonstrate that he did consider the issue and found that no violation of plaintiff's rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), occurred, since plaintiff's counsel did not properly subpoena the tape:

> This Court finds that defendant never made a proper discovery request of the Mountainside Police Department. It was defendant's counsel's duty to go to the Mountainside Police Department to 'inspect and copy' the discovery defendant desired. The subpoenas here were returnable at counsel's office and the record below reveals no attempt by defendant's counsel to properly obtain discovery.
>
> No violation of the discovery Rule 3:13–3 occurred by the Mountainside Police Department regarding the October 3, 1986 tape and therefore the sanctions suggested by defendant McGill are inappropriate.

This Court sees no reason to doubt the state court's finding that plaintiff's request for the subpoena was improper. Additionally, plaintiff has not made an adequate showing that anything in the dispatch tape was exculpatory. As such, the destruction of the tape is governed by the bad faith test set forth in *Arizona v. Youngblood*, —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), in which the Supreme Court held that the destruction of evidence that possibly could have been helpful to the defense is a constitutional violation only if a defendant shows the police destroyed the evidence in bad faith. Given the improper subpoena by McGill's attorney and the lack of any evidence of bad faith on the part of the Mountainside Police, it cannot be found that the destruction of the dispatch tape violated any of the constitutional rights of plaintiff. Accordingly, summary judgment

will be granted dismissing the Sixth Count of plaintiff's Complaint.

### E. *Plaintiff's Claims Against the Municipalities*

The Tenth, Eleventh and Twelfth Counts of plaintiff's Complaint essentially allege that plaintiff was harmed as a result of defendants Township of Mountainside's and Township of Springfield's inadequate training and supervision of township police officers. Defendants now move for summary judgment on plaintiff's claims against the municipalities, contending that plaintiff has not produced any evidence proving the townships had a custom or policy of not adequately training their police officers. The Court agrees with defendants and will grant summary judgment on the Tenth, Eleventh and Twelfth Counts of plaintiff's Complaint.

In *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court decided that a municipality can be found liable under 42 U.S.C. § 1983 only where the municipality itself causes a constitutional violation; respondeat superior or vicarious liability will not suffice to hold a municipality liable in a § 1983 action. 436 U.S. at 694–95, 98 S.Ct. at 2037–38. A municipality can cause a constitutional violation through a municipal policy or custom that bares a causal link to an alleged constitutional deprivation. *Canton v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In *Canton*, the Supreme Court recently set out the standard for establishing when a municipality is liable for a custom or policy resulting in an inadequately trained police force. The Court stated:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact ... [o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be

properly thought of as a city 'policy or custom' that is actionable under § 1983. (Footnote omitted). *Id.* 109 S.Ct. at 1204–05.

In the case at hand, plaintiff has failed to show that the incident involving plaintiff reflected a policy or custom of inadequate police training on the part of Mountainside or Springfield. Indeed, plaintiff has not even attempted to establish that such a policy or custom existed,[1] let alone that such a policy or custom evidenced deliberate indifference on the part of the Townships. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court stated that:

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552–53. The Third Circuit has applied the standard set forth in *Celotex* to require the nonmoving party to point to facts of record that contradict the facts identified by the moving party:

> Where a party opposing a motion for summary judgment has the burden of persuasion, and the moving party has identified sufficient facts to demonstrate that no genuine issue of material fact remains, the nonmoving party is obliged to identify those facts of record which would contradict the facts identified by the movant.

*Childers v. Joseph,* 842 F.2d 689, 694–95 (3d Cir.1988).

Defendants have not only pointed to the lack of any evidence of a custom or policy demonstrating inadequate training or supervision of police, but have also presented evidence, in the form of deposition testimony by Chief Adler, that it is the policy of the Mountainside Police Department to refrain from using excessive force and to subject an officer using excessive force to disciplinary action.

As plaintiff has not identified any facts that could lead to a finding that the townships had a policy or custom of inadequate training and supervision of their police officers, summary judgment is warranted on plaintiff's claims against the municipalities and police departments. Therefore, summary judgment will be entered in favor of defendants on plaintiff's Tenth, Eleventh and Twelfth causes of action.

## III. CONCLUSION

The Court will enter summary judgment in favor of defendants on the Fourth, Fifth, Sixth, Tenth, Eleventh and Twelfth Counts of plaintiff's Complaint. Summary Judgment is denied as to the Second, Third and Fourteenth Counts of the Complaint. Plaintiff's motion for partial summary judgment is denied in its entirety. In addition, defendant's motion for attorney's fees is denied without prejudice as premature.

---

1. Plaintiff has included in an appendix a memorandum describing three incidents of Mountainside Police officers firing shots at moving vehicles. This memorandum bears no relation to allegations of a pattern of police brutality and inadequate training of police officers and cannot assist plaintiff in defeating defendants' summary judgment motion.