21 F.3d 430
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Frederick J. KING, Plaintiff-Appellant,
v.
Gerald YOUNG and John Patterson, Defendants-Appellees.
 No. 92-1040.
 United States Court of Appeals, Seventh Circuit.
 Argued March 1, 1994.
Decided April 5, 1994.
Rehearing and Suggestion for Rehearing En Banc
Denied July 6, 1994.
 
 Before BAUER, FLAUM and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Frederick King appeals from the district court's grant of summary judgment in favor of the defendants in this civil rights action filed pursuant to 42 U.S.C. Secs. 1983, 1985. The issue presented is whether the district court erred in determining that under Indiana rules of collateral estoppel, King is barred from relitigation of his claim that the police officers wrongfully procured his arrest and conviction by fabricating evidence and suborning perjury.
 
 I. BACKGROUND
 
 2
 King, an employee of Hoosier Coin Shop, a second hand retail shop, was arrested following a "reverse sting" operation during which undercover police officers, Patterson and Jarman twice sold King items they claimed were "hot." The sales transactions were recorded by Sergeant Young. In November of 1982, King was tried before a jury and convicted of one count of attempting to receive stolen property in violation of Indiana Code Secs. 35-43-4-2(b) and 35-41-5-1, and acquitted of a second identical charge. He was sentenced on January 4, 1983, to two years of imprisonment. This sentence was suspended and instead King performed eighty hours of community service, served two years of probation, and paid a fine of $250.00.
 
 
 3
 Finding sufficient evidence to support his conviction, the Court of Appeals of Indiana affirmed. King v. State, 469 N.E.2d 1201 (Ind.App.1984). King's petition for a rehearing was denied as was his petition for transfer to the Indiana Supreme Court. King next filed a petition for post conviction relief, arguing that he was entitled to a new trial because Patterson and Jarman had given sworn testimony during a license revocation hearing for Hoosier Coin Shop which contradicted their testimony at his trial. Had this evidence been presented to the jury, he maintained, it would have created reasonable doubt and might have resulted in a different verdict. After a hearing, the post-conviction court concluded that this issue had been heard by the court on direct appeal and thus was res judicata. The court also noted that this was not "newly discovered" evidence, since King knew the substance of the testimony prior to trial but only later obtained the transcript. In any event, the court found that had the transcript been available at trial it would have provided merely impeaching evidence and would not have affected the outcome of the trial. In an unpublished order the state appellate court affirmed denial of post-conviction relief (No. 49A04-8607-PC-229, Dec. 30, 1986), and the Indiana Supreme Court denied review.
 
 
 4
 King then filed this civil rights suit under 42 U.S.C. Sec. 1983 against the prosecutor and two police officers alleging that they had violated his constitutional rights by: (1) intentionally misrepresenting and concealing information from the Magistrate, thereby causing his arrest without probable cause; (2) fabricating and withholding evidence; and (3) committing and suborning perjury. The district court granted summary judgment to the defendants on the basis of immunity and the common law defense of conviction. This court affirmed dismissal on grounds of immunity as to Goldsmith, the prosecutor,[1] but remanded the suit against the officers, holding that Indiana common law cannot bar relitigation of the issue of King's guilt if his conviction had been procured by fraud. King v. Goldsmith, 897 F.2d 885, 886 (7th Cir.1990). On remand, the district court again granted summary judgment to the defendants, this time on the ground that collateral estoppel precluded King from relitigating his claims. (District Court Order, Oct. 30, 1991). King argues that application of collateral estoppel to his claims was improper.[2]
 
 II. ANALYSIS
 
 5
 In determining whether a Sec. 1983 claim is precluded by a prior state court criminal conviction and subsequent state proceedings, the federal court is required to "give state court judgments 'the same full faith and credit ... as they have by law or usage in the courts of such state.' " Welch v. Johnson, 907 F.2d 714, 719 (7th Cir.1990) (quoting 28 U.S.C. Sec. 1738); see Leal v. Krajewski, 803 F.2d 332, 334 (7th Cir.1986). Thus, to determine the appropriate preclusive effect to be given to a state judgment, the federal court must consider: (1) whether state law would give the prior state judgment preclusive effect against the claims asserted in the federal action, and (2) whether the party against whom preclusion is asserted had a full and fair opportunity to litigate the claim in state court (i.e., whether the state proceedings satisfied the minimum requirements of Due Process). Allen v. McCurry, 449 U.S. 90, 104 (1980); Welch, 907 F.2d at 719; Guenther v. Holmgreen, 738 F.2d 879, 884-85 (7th Cir.1984), cert. denied, 469 U.S. 1212 (1985).
 
 
 6
 Indiana bars relitigation if: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) there is identity of the issues actually litigated and necessarily determined to support the judgment in the prior proceeding; and (3) the party to be estopped was a party or the privy of a party in the prior action. Sullivan v. American Casualty Co., 605 N.E.2d 134, 137 (Ind.1992). King was convicted by a jury of attempt to receive stolen property; that conviction was affirmed and post conviction relief denied. King v. State, 469 N.E.2d 1201 (Ind.App.1984). Thus, a final judgment was clearly rendered in this case. Where collateral estoppel is used defensively, as in this case, Indiana courts have historically not required mutuality and privity. Sullivan, 605 N.E.2d at 137. Finally, to determine whether the issues raised in King's Sec. 1983 action were essentially identical to those previously litigated, each claim will be evaluated in turn.
 
 A. Unlawful Arrest
 
 7
 King first challenges the basis of the warrant for his arrest.[3] He claims that officer Patterson intentionally omitted the fact that King "did not respond to or otherwise acknowledge his understanding and his actions were consistent and expected of him in his livelihood." (King's Br. at 32). The district court likened this claim to the issue of whether Patterson had lied about whether he told King the silverware was "hot." (Order Oct. 30, 1991, at 7). The district court concluded that King was collaterally estopped from relitigating the issue of whether the defendants had fabricated evidence to obtain an arrest warrant for three reasons: the jury necessarily found Patterson's testimony credible, the appellate court found the evidence sufficient to support the jury's verdict, and this conclusion was held to be res judicata by the post-conviction court. King argues that this essentially equates the jury's determination of guilt with a challenge to the integrity of the evidence relied on to establish probable cause.
 
 
 8
 As we noted in King I, where the arrest and conviction is allegedly procured through fraud, the focus is on the legality of the officers' conduct not on the legality of the conviction. Thus, equating the sufficiency of the evidence to convict with the issue of whether Patterson intentionally or recklessly omitted information from the warrant application was arguably error. Because these issues are distinct, and there is no evidence that the issue of probable cause to arrest has been previously litigated and actually determined, Indiana collateral estoppel law cannot preclude litigation of King's false arrest claim. See Schertz v. Waupaca County, 875 F.2d 578, 581 (7th Cir.1989) (collateral estoppel did not bar litigation of probable cause to arrest because claim not fairly and thoroughly addressed in preliminary hearing); Whitley v. Seibel, 676 F.2d 245, 248-49 (7th Cir.), cert. denied, 459 U.S. 942 (1982); cf. Guenther, 738 F.2d at 884 (issue barred because it had been actually litigated in the state criminal preliminary hearing).
 
 
 9
 Yet the defendants maintain that the existence of probable cause was subsumed in the verdict reached by the jury and thus conclusively determined.[4] Conviction of the underlying offense, they argue, bars King's claim that he was falsely arrested. The Second Circuit in Cameron v. Fogarty, 806 F.2d 380 (2d Cir.1986), cert. denied, 481 U.S. 1016 (1987), provides some support for this position.[5] See also Malady v. Crunk, 902 F.2d 10 (8th Cir.1990) (extending preclusive effect to guilty plea); Walker v. Schaeffer, 854 F.2d 138, 143 (6th Cir.1988) (same); Brumfield v. Jones, 849 F.2d 152, 155 n. 4 (5th Cir.1988) (discussing inter-circuit decisions on issue); McGill v. Mountainside Police Dep't, 720 F.Supp. 418 (D.N.J.1989) (discussing split among the circuits). But see Rose v. Bartle, 871 F.2d 331, 351 (3d Cir.1989) (criticizing Cameron ). And in essence, this is the reasoning relied on by the district court to find that the issue of probable cause had been previously determined. However, it was this reasoning that was rejected in King's first appeal.[6] And the defendants offer no persuasive reason why the court should reconsider its earlier decision.
 
 
 10
 In support of its position that probable cause had been previously determined, the government argued that the affidavit Patterson submitted in seeking a warrant for King's arrest supported a finding of probable cause and that the existence of probable cause was conclusively determined and subsumed in the state's criminal proceeding and conviction of King.[7] We have addressed the preclusive effect of a conviction on the existence of probable cause above. To the extent the government's argument focuses on an ex parte application for an arrest warrant as evidence of probable cause we note that it is not preclusive in later litigation, in particular where the arrest is alleged to have been procured through fraud. The preclusive effect to be given to a prior finding of probable cause in a Sec. 1983 action for false arrest was recently considered in Simmons v. Pryor, 9 F.3d 555, 558 (7th Cir.1993). Relying on Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098 (1986), the court held that a judicial officer's finding of probable cause to issue a warrant is not dispositive of a subsequent civil action against the police officer for false arrest. Simmons, 9 F.3d at 558. The Supreme Court in Malley held that a judicial determination of probable cause does not prevent a suit against the police officer who sought the warrant if a reasonably well-trained officer in the position of the defendant would have known that his affidavit failed to establish probable cause. Id. (discussing Malley, 475 U.S. at 345). In that case, even the officer's subjective good faith belief would not entitle him to immunity. See Mahoney v. Kesery, 976 F.2d 1054, 1058 (7th Cir.1992). Likewise, the converse holds that if a reasonable officer would have believed there was probable cause the arrest is valid even if the officer's belief would have been mistaken. Id. at 1057-58; see Hunter v. Bryant, 112 S.Ct. 534, 536 (1991) (per curiam) In both scenarios the standard is an objective one. Determining whether an officer's application for a warrant was objectively reasonable, requires that the court consider whether a reasonable officer under the circumstances--"seeing what he saw, hearing what he heard"--would have believed that the person had committed a crime. Simmons, 9 F.3d at 558 (quoting Mahoney, 976 F.2d at 1057); see Smith v. City of Chicago, 913 F.2d 469, 473 (7th Cir.1990), cert. denied, 111 S.Ct. 2824 (1991). However, if the officer bringing the cause before the judge intentionally supplied misleading information or deliberately concealed material facts so that he knew the arrest warrant had issued without probable cause, his unreasonable conduct will not be shielded by the facially valid warrant. United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421 (1984); Juriss v. McGowan, 957 F.2d 345, 350-51 (7th Cir.1992); Olson v. Tyler, 771 F.2d 277, 281 (7th Cir.1985); Stokes, 744 F.Supp. at 188. It was under these circumstances, King argues, that his arrest was made.
 
 
 11
 In order to make out a claim of false arrest, King must prove a lack of probable cause. Simmons, 9 F.3d at 560. As King bears the burden of proof in the underlying action, he must do more than merely allege a lack of probable cause to survive a motion for summary judgment. See Matsushita Electric Ind. Co. v. Zenith Radio Corp, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). If he fails to present sufficient evidence to create a genuine dispute as to the underlying facts supporting the probable cause determination, the court can decide whether probable cause exists. Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir.1993). Although this determination is generally made in the context of a motion to suppress, id, as the defendants argue was the case here, when the question of probable cause arises in a civil rights action for false arrest, it is typically not appropriate for disposition on summary judgment, unless there is no room for a difference of opinion concerning the facts or reasonable inferences that may be drawn from them. Id. (citing Llaguno v. Mingey, 763 F.2d 1560, 1565 (7th Cir.1985) (en banc)); Schertz, 875 F.2d at 582. In other words, only when no reasonable jury could find that the officers did not have probable cause to arrest, can the court conclude that probable cause existed as a matter of law. Maxwell, 998 F.2d at 434. This rule applies equally to cases in which the officers misrepresented or concealed material facts in an application for an arrest warrant, as is alleged here. DeLoach v. Bevers, 922 F.2d 618, 623 (10th Cir.1990), cert. denied, 112 S.Ct. 65 (1991). King relies on testimony given at the licensing hearing to support his contention that at the time Patterson applied for the arrest warrant he knew that he did not have probable cause because he knew that King had not affirmatively acknowledged that the silverware was "stolen." However, even assuming that Patterson intentionally omitted the fact that King had not verbally acknowledged receipt of stolen goods, if probable cause can be established via objective information independent of the omitted fact then the existence of probable cause precludes the claim for unlawful arrest. See Schertz, 875 F.2d at 582. King's failure to respond is not alone conclusive evidence that he was ignorant of the stolen nature of the goods. Indeed, under these circumstances it may perhaps be considered wise not to respond after receiving information of the kind. Faced with this situation, a reasonably prudent officer may have believed that King had acquiesced through silence to the commit the offense. Absent other evidence undermining probable cause, no reasonable jury could have found that the officers did not have probable cause to arrest. Thus irrespective of the deliberately omitted information, we conclude that probable cause existed as a matter of law.
 
 B. Fabricating/Withholding Evidence
 
 12
 When Officer Young recorded the November 23, 1981 sting operation from a restaurant across the mall from the Hoosier Coin Shop, static from the mall interfered, resulting in a poor quality recording of the transaction. As a result, when the recording was transcribed shortly after the transaction there were a number of blanks with the notation "inaudible." One year later, on the eve of trial, the State sent King a revised transcript of this transaction. Where the original transcript had read "inaudible" the revised transcript revealed statements by King indicating that he, in fact, heard, understood, and knowingly received property represented as stolen. At trial, Patterson explained that he and the prosecutor had listened to the audio tape a number of times and had revised the transcript to reflect their view. Patterson's statement reads basically the same in both transcripts: "I might be able to get a whole set of it then. This is a little hot. You might want to melt this shit down." Following this in the original transcript King's response is stated as: "Yea decorate gold. (inaudible)." The revised transcript reads: "Yeah, get it ready to go ... no problem." Although defense counsel vigorously cross-examined the officers regarding the discrepancies in the two transcripts, he refused to inquire about testimony they had given at a prior proceeding, which directly contradicted their trial testimony and the revised transcript without having the transcript as proof. The contradictory testimony referred to was given by Patterson and Jarman prior to trial at a license revocation hearing for the Hoosier Coin Shop. Most significantly, Patterson testified that during the November 23rd sting he told King that the silverware was "hot." King, he said, "chose to ignore that statement." Officer Jarman also testified that King did not respond when Patterson told him that the silverware was "hot." "Yes, sir," she testified, "it's true, no verbal response." King learned about the testimony the officers had given at the license revocation hearing from John Rousch, owner of the Hoosier Coin Shop. Although counsel made several attempts to obtain the hearing transcript before trial, it was not until after sentencing that King received a copy.
 
 
 13
 In this civil rights suit King is not directly challenging the validity of his conviction. Nor is he attacking the length or duration of his sentence, since he has already satisfied the sentence imposed. Rather, like the plaintiff in Smith v. Springer, 859 F.2d 31 (7th Cir.1988), he directly challenges the legality of the conduct of the officers and does not impugn the integrity of the state judicial system. The legality of the police officers' conduct is distinct from the issue of whether King committed the act of receiving stolen property. It is therefore irrelevant to his Sec. 1983 action that the determination of guilt may be undermined were King to prevail on his claim of fabricated evidence and withholding of favorable evidence. To prevail on his civil rights claim King must demonstrate that the officers, while acting under color of law, deprived him of the constitutional right to a fair trial by knowingly presenting false evidence and by suborning perjury. Id. at 34; Schertz, 875 F.2d at 581.
 
 
 14
 King argued in his petition for post conviction relief that the license revocation hearing transcript was clear proof that the police officers had presented altered evidence at trial which indicated that King had responded to the "hot" statement. If confronted with this evidence, he maintained, a jury would likely acquit. The court denied relief concluding that the issue was barred by the doctrine of res judicata because the jury had sufficient evidence to infer that King believed the items were stolen, and in the alternative found that the evidence was merely impeaching, so would not likely have effected the outcome. Amicus curiae counsel argues that it is not the "effect" that the missing transcript might have had on the outcome of King's criminal trial that is at issue. In support, amicus relies heavily on LaBoy v. Zuley, 747 F.Supp. 1284 (N.D.Ill.1990), in which a civil rights plaintiff claimed that the defendant police officers had conspired to obtain his conviction by fabricating evidence and suborning perjury. Plaintiff LaBoy was not precluded from pursuing his claim of allegedly fabricated evidence based on inconsistent testimony provided by police officers at his trial because the state court had not made an explicit finding resolving the inconsistency, but rather deemed it insufficient to effect the outcome of the case. Similarly here amicus argues that the inconsistencies King raises as evidence of fabrication were never resolved in light of his due process right to a fair trial. Counsel argues therefore that granting preclusive effect to the prior proceeding was error. However, King's case is distinguishable from LaBoy.
 
 
 15
 The inconsistency between the original transcript and the revised transcript is no different than the inconsistency between the license revocation hearing transcript and the revised transcript. The point of contention being whether King responded to the officer's statement that the merchandise was "hot." Defense counsel extensively cross-examined the officers regarding the inconsistency between the original and revised transcripts, thereby calling attention to the discrepancies. So, in reaching the verdict of guilty the jury necessarily found the officer's explanation for the inconsistency credible and ultimately found that King did knowingly purchase goods represented as stolen. To the extent the audio recording agrees with the license revocation transcript and thus is inconsistent with the revised transcript, the jury heard the audio recording and resolved any inconsistency against King. Perhaps more significant, is the fact that the license revocation hearing testimony was itself considered by the post-conviction court in light of all other evidence offered at trial and in finding the evidence sufficient to convict, that court also concluded that the jury had necessarily resolved the inconsistencies presented in favor of the police officers. The jury's finding was upheld by the state appellate court and this ruling was held to be res judicata on the issue of whether the inconsistent testimony provided at the license revocation hearing entitled King to a new trial. Because there was no inconsistency provided by the transcript of the license revocation hearing that the jury was not already aware of, there is no basis to conclude that evidence was altered. At most, the evidence presented inconsistencies which were resolved at trial and their resolution upheld on appeal. Because the decision of the post-conviction court, in essence, does resolve the question of whether the defendants fabricated evidence at trial, it should be given preclusive effect.
 
 C. Committing and Suborning Perjury
 
 16
 King also claims that prior testimony of the officers given under oath at the licensing hearing proves that the defendants perjured themselves at trial and conspired with Officer Jarman to present false testimony. This knowing and intentional subornation of perjury, he alleges, denied him a fair trial. In addressing King's claim of perjured testimony, we need not consider whether collateral estoppel precludes litigation but rather can resolve this issue on grounds of immunity.[8] With respect to the police officers who King alleges perjured themselves at trial, they are entitled to absolute immunity from civil liability. Briscoe v. LaHue, 460 U.S. 325, 332 (1983) (a police officer who gave perjured testimony at plaintiff's criminal trial was absolutely immune from subsequent damages liability under Sec. 1983 "even if the witness knew the statements were false and made them with malice"); Stokes, 744 F.Supp. at 186.
 
 
 17
 Even if the defendants are immune from liability for their own testimony, King urges that absolute witness immunity should not shield those officers for suborning perjury from Officer Jarman. This argument, however, is precluded by this court's recent decision in House v. Belford, 956 F.2d 711, 720 (7th Cir.1992), in which the court extended Briscoe immunity to alleged conspiracies to commit perjury, reasoning that "[a] person may not be prosecuted for conspiring to commit an act that he may perform with impunity." See also Wilkins, 872 F.2d at 192; accord Miller v. Glanz, 948 F.2d 1562, 1571 (10th Cir.1991) (joining this circuit and the Sixth Circuit in holding that absolute witness immunity extends to conspiracies to present false testimony). On this basis, King's claim that his conviction was wrongfully procured through a conspiracy to present false testimony must fail.
 
 III. CONCLUSION
 
 18
 In sum, we conclude that with respect King's claim that Officer Patterson omitted material information when seeking a warrant for King's arrest, King has failed to present evidence sufficient to challenge the existence of probable cause and therefore, summary judgment was proper. Relitigation of the issue of whether the defendants fabricated and withheld evidence was properly collaterally estopped because it was necessarily determined at trial, affirmed on appeal and held to be res judicata by the post-conviction court. Finally, the defendants are entitled to absolute immunity from liability under Sec. 1983 based on their testimony at trial and for allegedly conspiring to present false testimony. For these reasons, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 In his original pro se brief filed on appeal, King attempted to revive the issue of immunity which was granted to the prosecutor and affirmed by this court. However, amicus counsel acknowledges that dismissal on the ground of absolute immunity has been affirmed. King v. Goldsmith, 897 F.2d 885, 886 (7th Cir.1990). The previous decision is now the law of the case and, presented with no argument of plain error, there is no reason to reexamine it. See Evans v. City of Chicago, 873 F.2d 1007, 1013-14 (7th Cir.1989), cert. denied, 495 U.S. 956 (1990)
 
 
 [2]
 Appellees urge the court not to consider the arguments presented by amicus counsel, to the extent they differ from those presented by King. They argue that King has waived these issues by not presenting them as such in his pro se brief. A liberal reading of King's pleadings, as is required, Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594 (1972), indicates that issues presented by amicus were in fact raised by King. The fact that amicus may have further developed arguments on behalf of King does not detract from the fact that the issues were squarely presented in King's pro se brief
 
 
 [3]
 Although raised in King's pro se brief, amicus curiae counsel does not pursue the false arrest claim
 
 
 [4]
 Defendants also argue that they are entitled to summary judgment on the grounds of qualified immunity. However, the district court correctly concluded that Patterson would not be entitled to qualified immunity because under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), "lying to a magistrate to obtain an arrest warrant would violate a clearly established constitutional right of which a reasonable person would have known."
 In the alternative, defendants argue that a Sec. 1983 action is not the correct forum for plaintiff to air his grievances about the alleged unlawful arrest. Resort to a pre-deprivation hearing (i.e., probable cause hearing) or to adequate post deprivation remedies via a petition for post conviction relief, defendants contend, provide adequate relief for the alleged Fourth Amendment violation. This doctrine first established in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981), is inapplicable where the plaintiff asserts a violation of substantive constitutional guarantees as distinguished from a violation of procedural due process. Guenther v. Holmgreen, 738 F.2d 879, 882 (7th Cir.1984). As such it has no bearing on whether the defendants are liable under Sec. 1983 for violating the plaintiff's Fourth Amendment right to be free from unlawful arrest. Stokes v. City of Chicago, 744 F.Supp. 183, 188 n. 5 (N.D.Ill.1990); see also Mahoney v. Kesery, 976 F.2d 1054, 1061 (7th Cir.1992) (Parratt does not bar a suit for a violation of the right not to be compelled to incriminate oneself); Wilkins v. May, 872 F.2d 190, 194-95 (7th Cir.1989) ("substantive due process" encompasses the right to be free from police interrogation so coercive that it infringes traditional liberties), cert. denied, 493 U.S. 1026 (1990).
 
 
 [5]
 Applying "long-established common-law principles," the Cameron court concluded that if a plaintiff has been convicted of the crime for which he was arrested, that conviction is conclusive evidence of a lawful arrest; and so serves as a complete defense to a Sec. 1983 action asserting that the arrest was made without probable cause. 806 F.2d at 387-89
 
 
 [6]
 In King I, Judge Posner concluded that because King challenged his conviction on grounds of fraud, the rationale underlying the common law bar as discussed in Cameron was not squarely applicable to this case
 Nothing in the formulation or rationale of the common law rule bars relitigation of the issue of the plaintiff's criminal guilt if the prosecution in the criminal proceeding had procured the plaintiff's conviction by fraud, as the plaintiff in this case charges. Otherwise police officers could procure a conviction by fraud and then--irrespective of whatever exceptions a state's law of res judicata and collateral estoppel had created for just such cases--use that conviction to bar their victim's effort to redress the fraud by means of a tort action, whether for false imprisonment, or for malicious prosecution, or for violation of civil rights. Cameron does not read on that case.
 King, 897 F.2d at 887.
 
 
 [7]
 The government's brief focused on the establishment of probable cause through conviction and does not rely on prior resolution of the issue through a hearing on a motion to suppress evidence
 
 
 [8]
 The appellate court may affirm a grant of summary judgment on any ground supported by the record. Box v. A & P Tea Co., 772 F.2d 1372, 1376 (7th Cir.1985), cert. denied, 478 U.S. 1010 (1986)