Thomas **MAHONEY**, Plaintiff–Appellee,

v.

Russell **KESERY**, Defendant–Appellant.

No. 91–2929.

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1992.

Decided Sept. 30, 1992.

Stephen R. Swofford, Bruce L. Carmen (argued), D. Kendall Griffith, Hinshaw & Culbertson, Patrick E. Mahoney, Chicago, Ill., for plaintiff-appellee.

Grant F. Langley, Scott G. Thomas (argued), Office of City Atty., Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS and POSNER, Circuit Judges, and WILL, Senior District Judge.*

POSNER, Circuit Judge.

A jury awarded a Marquette undergraduate $20,000 in his suit under 42 U.S.C. § 1983 against a Milwaukee police officer for false arrest and malicious prosecution. 770 F.Supp. 472 (E.D.Wis.1991). On appeal, officer Kesery argues that he is entitled to immunity from liability for false arrest and that malicious prosecution is not a constitutional tort.

Mahoney and his roommates were having a beer party one night in the house where they lived. Two crashers stole a keg. Mahoney and others gave chase. The thieves dropped the keg; Mahoney and another retrieved it. At about the time and place where the keg was dropped, one of the thieves was severely beaten. A police investigation resulted in charges of criminal battery being lodged against several students, not including Mahoney. Two officers, Kesery and Temp, visited Mahoney's house to interview him and his roommates in an effort to obtain evidence against the defendants. Temp was the one who interviewed Mahoney and his written report of the interview states that Mahoney denied knowledge of the beating. Kesery testified in the present case that Temp had told him that at the interview Mahoney had claimed not to have left the house at all on the

night of the beating whereas in fact he had chased the thieves and recovered the keg. Temp did not put any of this in his report but did testify, backing up Kesery's testimony, that he had indeed told all of it to Kesery. Yet Kesery made no mention of it in his report either, though months later he made a note of it on a scratch pad. Mahoney denied having told Temp that he hadn't left the house on the night of the beating.

Kesery recommended to the district attorney's office that it prosecute Mahoney for obstruction of justice for having lied about not leaving the house. The office agreed, and issued a criminal complaint against Mahoney, pursuant to which he appeared before a county judge who found probable cause to prosecute. Mahoney pleaded not guilty. Later Kesery ordered Mahoney to come down to the police station to be booked, and this was done; in the course of the booking, as is routine, he was searched, fingerprinted, and photographed. A jury trial was scheduled for three months later but on the day it was to begin the judge dismissed the charges against Mahoney on the motion of the assistant district attorney assigned to try the case.

The jury in Mahoney's civil rights case, the case on appeal to us, rendered a special verdict in which it found that Kesery had (1) arrested Mahoney without probable cause and (2) violated Mahoney's constitutional right to due process of law. The judge refused to set aside the verdict, finding that the evidence supported "the jury's finding that Officer Kesery's decision to arrest and prosecute the plaintiff was unsubstantiated by probable cause and motivated by malice or vindictiveness." The judge made his own finding on immunity: "Having examined the circumstances, the court is confident that a reasonable police officer—perhaps one not burdened with the unique frustrations then facing Officer Kesery—would have declined the temptation to arrest and prosecute the plaintiff on such a flimsy charge." The reference to "unique frustrations" is to the "wall of silence" with which the Marquette students greeted the police investigation of the beat-

* Hon. Hubert L. Will of the Northern District of     Illinois, sitting by designation.

ing. The police suspected quite reasonably that there had been several witnesses to the beating, but none would acknowledge having witnessed it.

Kesery does not deny that Mahoney was "arrested" even though he was permitted to come down to the police station under his own steam, since if he had refused he would have been dragged there. 2 Wayne R. LaFave, *Search and Seizure* § 5.1(a), at p. 392 (2d ed. 1987). We needn't worry about when exactly such an "arrest" begins, cf. 2 *id.* § 5.1(a), though we doubt that it begins before the moment of booking; otherwise any compulsory process, including a routine subpoena to testify in a civil case, might be deemed an arrest on the theory that the person served with the process could have been arrested had he defied it. This very way of putting it distinguishes between process and arrest. But the booking, with its searching and fingerprinting and photographing, was an arrest, *Albright v. Oliver*, 975 F.2d 343, 344 (7th Cir.1992), which is all that matters. Nor does Kesery deny that this arrest, low key and even tenuous as it might seem to be, was a seizure within the meaning of the Fourth Amendment. Oddly, we cannot find a case on the point, other than our recent *Albright* decision; it seems simply to be taken for granted that every arrest is a seizure of the person within the meaning of the Fourth Amendment—but no more than in *Albright* do we have any reason to question the assumption. Nor does Kesery challenge the jury's finding that the seizure was not made on probable cause and therefore violated the amendment. He takes his stand on the qualified immunity of public officers, arguing that the judge was required to make an independent finding on the existence of probable cause before the case was submitted to the jury, and also that we must review the judge's (belated) finding on the question *de novo*, that is, without giving any deference to the judge's view.

Official immunity is immunity from the burdens of a trial as well of a damages judgment, and therefore the existence of immunity in a particular case should be decided as early as possible in a litigation, *Hunter v. Bryant,* ⸺ U.S. ⸺, ⸺, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam); *Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)—ideally, well in advance of trial. But that may not be the sensible course when, as in this case, the issue of immunity and the principal issue on the merits are one and the same. Kesery concedes that in 1987 when the false arrest occurred the constitutional right not to be arrested without probable cause was well established. So the only question bearing on immunity was whether he had probable cause when he caused Mahoney to be arrested. That of course was *the* issue for the jury on the Fourth Amendment claim, as is evident from the special verdict, which asked no other question relating to that claim. The spectre of duplicate factfinding procedures rears its head.

Kesery intimates, however, that the test for the immunity is not whether he had probable cause but whether he had probable cause to think he had probable cause. This would be a plausible suggestion if probable cause were independent of what the arresting officer could reasonably have known. Then we might conclude, if Temp had lied to Kesery about what Mahoney had told Temp about his whereabouts, that Kesery thought he had probable cause to arrest Mahoney but did not in fact. However, probable cause depends not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*—seeing what he saw, hearing what he heard. *Richardson v. Bonds,* 860 F.2d 1427, 1431 (7th Cir.1988). This formulation of the standard is consistent with the standard's being an objective one. *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). Probable cause, objectively conceived, signifies not that this particular officer believed that the person he arrested had committed a crime but that a *reasonable* officer *would have believed* the person had committed a crime. *United States v. Anton,* 633 F.2d 1252, 1254 (7th Cir.1980). If so, the arrest

is lawful even if the belief would have been mistaken. *Hunter v. Bryant, supra,* —— U.S. at ——, 112 S.Ct. at 536. But if a *reasonable* officer would not have believed the person had committed a crime, then the officer, whatever he did or did not believe, is acting contrary to clearly established law and therefore has no immunity. *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988). His subjective good faith cannot save him. *Scott v. United States, supra,* 436 U.S. at 138, 98 S.Ct. at 1723. Nor—save for the limited dispensation provided by the doctrine of "collective knowledge," *United States v. Wilson,* 894 F.2d 1245, 1254 (11th Cir.1990)—can the officer avoid liability by showing that someone else, who was so placed as to know, or be able to know, more than he did, could have formed a reasonable belief that the arrested person had committed a crime. *Villanova v. Abrams,* 972 F.2d 792, 798 (7th Cir.1992).

If this is right, then in a case like this, if, as Kesery argues, the judge must determine the immunity issue before the trial on the merits, there will be successive trials on the *identical* issue, that of probable cause, since either party is entitled to a jury trial. That is one trial too many. (We think Kesery's lawyer knows this, because he didn't request a hearing in the district court on the question of immunity.) There are two alternatives. One is to postpone the determination of immunity to the trial on the merits. The judge listens to the evidence along with the jury, then makes his own decision on the question of immunity. That is what Judge Gordon did. The other alternative is to let the jury decide the issue. At argument Kesery's lawyer seemed to acknowledge the propriety of such a procedure by explicitly disclaiming any suggestion that a jury is an incompetent tribunal to find the facts determinative of immunity. This implies that the judge could have denied immunity on the basis of the jury's answer to special verdict question number one and thereby saved himself a bit of time. But he went on and made his

own finding, though it was also adverse to Kesery.

■ How to choose between the alternatives? In support of the first, the procedure followed here, it can be pointed out that cases in this and other circuits keep saying that the question of immunity is for the judge because it is a question of law. E.g., *Simkunas v. Tardi,* 930 F.2d 1287, 1291 (7th Cir.1991); *Alvardo v. Picur,* 859 F.2d 448, 451 (7th Cir.1988). But that proposition requires qualification to be precise. What is true is that *often* the question of immunity is one of law—specifically, it is the question: what was the clearly established rule of law when the officers committed the acts for which they are being sued? But where as in this case the only contested issue bearing on immunity is whether a reasonable officer would have thought the defendant had committed a crime, there is no question of law—at least in the sense of a question reserved for judges, for the jury is going to decide the same question. *Llaguno v. Mingey,* 763 F.2d 1560, 1565 (7th Cir.1985) (en banc) (plurality opinion); *Reardon v. Wroan,* 811 F.2d 1025 (7th Cir.1987) (per curiam). As there can be no doubt therefore that the jury is legally competent to decide the question, and as the jury must decide it anyway when the case goes to trial, there is an argument that the jury might as well be allowed to decide it with preclusive effect on the judge's determination of immunity.

But in *Jones v. City of Chicago, supra,* 856 F.2d at 994–95, we gave tentative (tentative because the question had not been argued) approval to the procedure followed by Judge Gordon in this case. We were concerned that "a jury might be confused if it had to decide not only whether the defendants had probable cause but also whether, even if not, reasonable officers in their position *could* have thought they had probable cause." *Id.* at 995 (emphasis added). That may not be quite right either. It sounds like the notion, questioned at the outset of this discussion, of "probable cause to have probable cause." If the issue of the adequacy of the grounds for the

arrest is the same in the immunity inquiry and on the merits of the false-arrest charge, then unless some legal rule or standard bearing on probable cause has changed since the arrest, the jury's determination that there was or was not probable cause will automatically resolve both immunity and the merits. That way of resolving the matter implies, it is true, that the issue of immunity drops right out of the case if there are genuine issues of material fact and the law has not changed since the officers acted. But maybe that is correct.

All this is a fearful tangle (especially given dicta in *Hunter v. Bryant, supra,* — U.S. at ——, 112 S.Ct. at 536–37, which might be taken to support the "probable cause to believe there was probable cause" approach), but one that we need not unravel here because *both* triers of fact decided the question that was dispositive of both immunity and the merits—the question of probable cause—against Kesery.

■ We shift focus now from the trial court to the appellate court: Whoever makes the finding of probable cause, we do not review it *de novo,* because for purposes of appeal such a finding is a finding of fact. (We do of course review pure determinations of law, and they are frequent in immunity cases.) The standard for appellate review of findings of probable cause was unsettled when this case was briefed and argued, though there was abundant authority that the standard was clear error—at least in a civil rights case, such as this. E.g., *Jones v. City of Chicago, supra,* 856 F.2d at 995; *Hughes v. Meyer,* 880 F.2d 967, 969 (7th Cir.1989); *United States v. McKinney,* 919 F.2d 405, 419 (7th Cir.1990) (concurring opinion). *Simkunas v. Tardi, supra,* 930 F.2d at 1291, does, it is true, say that the standard of review is *de novo,* but the court was speaking in the context of review of summary judgment—where the standard really is *de novo.* We are asked in this case to review a factual *determination* of probable cause, not a legal determination that there is no genuine issue of material fact, and it is now settled that the standard of review of a factual

determination of probable cause is, in this circuit anyway, clear error, and this whether the determination is made by a magistrate, by a district judge or other trial judge, or by a jury. *United States v. Spears,* 965 F.2d 262, 269 (7th Cir.1992).

■ The use of this standard should not be at all controversial in a case like this, where the issue of probable cause turns entirely on the resolution of a dispute over credibility. Either Mahoney was lying when he denied having told Temp that he had been in the house all night, or Temp and Kesery were lying when they testified to his having told them that. Evidently the jury and the district judge thought that the officers were lying. On what basis could we disagree? Not only is the hypothesis of their lying contrary to no law of nature or any other source of apodictic truth; it is contrary to nothing in the record except the officers' own self-serving testimony.

We turn to the question of malicious prosecution (where, oddly, Kesery does not argue immunity, at least clearly enough to preserve the issue for review). As noted in *Brummett v. Camble,* 946 F.2d 1178, 1180 n. 2 (5th Cir.1991), and in Justice White's dissent from the denial of certiorari in that case (*Campbell v. Brummett,* —— U.S. ——, ——, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992)), the cases are, at least superficially, all over the lot—some saying malicious prosecution is a constitutional tort, some that it isn't, some that it may be. Until our recent decision in *Albright v. Oliver, supra,* of which more shortly, this circuit had had only passing encounters with the issue, but leaned toward the "may be" position. See *Easter House v. Felder,* 910 F.2d 1387, 1407 (7th Cir.1990) (en banc) (investigative harassment); *Wroblewski v. City of Washburn,* 965 F.2d 452, 456 n. 2 (7th Cir.1992); *Fernandez v. Perez,* 937 F.2d 368, 371 (7th Cir.1991); *Smith v. City of Chicago,* 913 F.2d 469, 473 (7th Cir.1990); *Jones v. City of Chicago, supra,* 856 F.2d at 992; *Hampton v. Hanrahan,* 600 F.2d 600, 630 (7th Cir.1979), rev'd in part on other grounds, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (malicious prosecution actionable un-

der the Constitution only if it is of "constitutional magnitude").

As we noted the other day in *Albright v. Oliver, supra,* 975 F.2d at 345–46, this seems the right place to be. The Supreme Court has been emphatic that not every tort committed by public officers is actionable under the Constitution, even though every one could be thought to deprive the tort's victim of an interest in the nature of liberty or property and to do so without due process of law—often without any process at all. Two cases are particularly important: *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), oddly not cited by either party, and *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The first holds that defamation by public officers is not actionable under the Constitution, even though it is state action and harms a person's reputation and, in consequence, often his pocketbook. If defamation is not actionable, it is difficult to believe that malicious prosecution is. *Albright v. Oliver, supra,* 975 F.2d at 345. Here it took the form of filing criminal charges, but as the defendant was not forced to stand trial he cannot even argue that he was deprived of liberty by being required to attend his own trial. Not that a criminal defendant *must* attend his own trial as a matter of law, Fed.R.Crim.P. 43(b)(1), but as a practical matter he must if he wants to be acquitted; and if he refuses to attend the trial, chances are that he is sitting in jail, since attendance at trial is a standard condition of bail. 26 *West's Legal Forms* § 9.156, at p. 858 (2d ed. 1986). What is true is that Mahoney was required to (and did) appear for arraignment, Ill.Rev.Stat. ch. 38, ¶ 110–10(a)(1), but we do not think a required court appearance, any more than having to show up at the motor vehicle bureau to take a driving test in order to get a driver's license, is a sufficient deprivation of liberty to warrant the elevation of malicious prosecution to a constitutional tort. It is less dramatic, less traumatic, than being arrested, or booked, the first usually involving being searched and handcuffed, the second being searched, fingerprinted, and photographed, as in this case. We must remember that

constitutional tort remedies are additive to state law remedies. The duplication of legal remedies for the same wrong, with all the costs and delays and burdens and frictions thereby entailed, is undesirable unless the wrong is an exceedingly serious one.

Of course it is exceedingly unpleasant to be charged with a crime, but it can be exceedingly unpleasant to be defamed, too. Even if the first type of imposition is worse in general, we must bear in mind that a malicious prosecution is by definition groundless, implying that the defendant's legal remedies by way of defense or appeal are adequate, though they may not eliminate the emotional, reputational, or pecuniary consequences of the prosecution. The important point is that neither defamation nor malicious prosecution is a trivial tort, yet that consideration was not enough to persuade the Supreme Court to elevate the former to the rank of constitutional tort.

██ Although defamation as such is not actionable under the Constitution, and neither is malicious prosecution as such, either tort can be a link in a chain showing a deprivation of liberty or property without due process of law. E.g., *Raysor v. Port Authority,* 768 F.2d 34, 39–40 (2d Cir.1985). That is the significance of the statement in the *Hanrahan* opinion that malicious prosecution must attain "constitutional magnitude" to be actionable under the Constitution, or must, in the equivalent formulation of *Bretz v. Kelman,* 773 F.2d 1026, 1031 (9th Cir.1985) (en banc), bring about a denial of constitutional rights. See also *Johnson v. Barker,* 799 F.2d 1396, 1400 (9th Cir.1986). In the analogous case of defamation, if a public employee is fired without a hearing or other process, on the basis of publicly disseminated charges of misconduct that although false will as a practical matter prevent him from obtaining comparable employment elsewhere, his occupational liberty, a form of Fourteenth Amendment liberty, has been infringed, and he can sue under 42 U.S.C. § 1983. So at least we have held many times. *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136 (7th Cir.1984); *Bone v. City of Lafayette,* 763 F.2d 295, 298 (7th Cir.1985);

*Swank v. Smart,* 898 F.2d 1247, 1257 (7th Cir.1990); *Health Equity Resources Urbana, Inc. v. Sullivan,* 927 F.2d 963, 968 (7th Cir.1991); *Wroblewski v. City of Washburn, supra,* 965 F.2d at 456. These holdings may, as suggested in *Koch v. Stanard,* 962 F.2d 605 (7th Cir.1992), be questionable in light of the Supreme Court's recent decision in *Siegert v. Gilley,* —— U.S. ——, ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991), which could be read to suggest that no consequences, however grave, resulting from a loss of reputation can make defamation actionable as a constitutional tort. If this is right, the "occupational liberty" rationale that we have developed to make sense of the dispensation which *Paul v. Davis* allowed for some defamations to remain actionable under section 1983 may be out the window, and the withdrawal of that dispensation itself imminent. But that is an issue for another day.

It is also possible that *Parratt v. Taylor,* which teaches that the denial of a hearing is not actionable under the due process clause if a predeprivation hearing would be impracticable and the state provides an adequate post-deprivation hearing through its ordinary judicial processes, will eventually be discovered to have wiped out all constitutional defamation claims and malicious prosecution as well. For both are situations in which a state officer (officer Kesery in our case) commits an unauthorized act that the state could not as a practical matter have prevented by requiring a hearing in advance of the act; so if the state does the next best thing and provides a hearing afterward, that is all that due process requires. A malicious prosecution is by definition groundless, and the State of Wisconsin provides a machinery for rectifying groundless prosecutions. The machinery includes trials and appeals, as well as the right to bring a common law suit for malicious prosecution. *Johnson v. Barker, supra,* 799 F.2d at 1400, implies that this fact alone might knock out a malicious-prosecution claim.

■ Although for all these reasons the standing of malicious prosecution as a con-stitutional tort is weak, this case is unusual because it is far from being a garden-variety malicious prosecution case. Mahoney argued to the jury that his right, founded on the Fifth Amendment but made applicable to the states by the Fourteenth, not to be forced to incriminate himself was infringed by the filing of the criminal charges. For those charges, he contended with some support in the evidence, were intended to induce him to spill the beans about the beating even though that might implicate him as a participant in it. Of course the charges were filed not by defendant Kesery but by the State of Wisconsin, or if one prefers to personify it so by the district attorney, and neither the state nor the D.A. is or could be made a defendant in this suit. But a police officer who procures a prosecution by lying to the prosecutor or to the grand jury can be sued for the consequences of the prosecution. *Jones v. City of Chicago, supra,* 856 F.2d at 993–94; see also W. Page Keeton *et al., Prosser and Keeton on the Law of Torts* § 119, at pp. 872–73 (5th ed. 1984). And neither *Paul v. Davis* nor *Parratt v. Taylor* bars a suit for a violation of the right not to be forced to incriminate oneself. *Cooper v. Dupnik,* 963 F.2d 1220 (9th Cir.1992) (en banc); cf. *Dunn v. Tennessee,* 697 F.2d 121, 125 (6th Cir.1982). For at least as interpreted thus far, *Parratt* is limited to cases in which the constitutional right on which suit is based is the right to due process itself, not the right to some other constitutional protection in the Bill of Rights that has been made applicable to state action by the due process clause. (The clause thus, has confusingly, a dual function: to guarantee people the protections implied by the concept of due process of law, and to transmute the other commands of the Bill of Rights, originally addressed just to the federal government, into commands against the states.)

But was Mahoney's right not to be compelled to incriminate himself violated? No incriminating statement was made by Mahoney, let alone used against him in a legal proceeding, and we have said that "the Fifth Amendment does not forbid the forcible extraction of information but only the

use of information so extracted as evidence in a criminal case—otherwise, immunity statutes would be unconstitutional." *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989); see also *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264, 110 S.Ct. 1056, 1060, 108 L.Ed.2d 222 (1990); *Buckley v. Fitzsimmons*, 919 F.2d 1230, 1244 (7th Cir. 1990). Kesery, however, has waived any argument based on those cases, so we need not decide whether the argument would succeed. Against it can be urged a more capacious view of the self-incrimination clause, as designed to forbid not only the use of coerced confessions in criminal proceedings but also the use of torture or equivalent means of coercive interrogation, whatever use is made of their fruits, if there are any fruits. *Cooper v. Dupnik, supra*, 963 F.2d at 1238–45. Whether this view is sound, and whether, if so, it embraces Kesery's conduct, we need not try to decide today.

■ Kesery could have objected to the plaintiff's use of the term "malicious prosecution" to describe the due process claim (notice, though, that the term was not used in the special verdict), or to the instructions under which the claim was submitted to the jury. He did not, and in our court he stakes his all on persuading us that the use of the words "malicious prosecution" poisoned what, phrased differently as it should have been done to keep constitutional and common law issues distinct, would be, if not a perfectly good claim of unconstitutional conduct (an issue waived by Kesery), one distinct from malicious prosecution. We are not persuaded that the use of the term fatally tainted the verdict. Cf. *Dunn v. Tennessee, supra*, 697 F.2d at 125. Though not separately actionable under the Constitution, malicious prosecution can be, and here was, a step on the road to a constitutional violation for which redress is available under section 1983.

Affirmed.