In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1575

Cynthia Williams,

Plaintiff-Appellant,

v.

Lindsey Heavener, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 97 C 0890--David H. Coar, Judge.

Argued November 10, 1999--Decided June 28,
2000

   Before POSNER, Chief Judge, and ROVNER,
and Diane P. Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  Officer
Cynthia Williams of the Joliet Police
Department was involved in a
confrontation with five of her department
colleagues. The incident quickly led to
her arrest. Back at the station, she was
told to fill out a conduct report and
then released. Four days later, however,
she was arrested again and charged with
obstructing a police officer. Acquitted
of the obstruction charge, she claims
that all of this was malicious and based
on false allegations by her colleagues.
Almost two years later, she sued them and
the City of Joliet, alleging violations
of her constitutional rights. The
district court granted the defendants'
motion for summary judgment and we
affirm.

   This litigation began with a relatively
routine traffic stop. On August 20, 1994,
as Williams was driving behind a car in
which her two brothers (Barney and
Eugene, Jr.) and nephew (Eugene III) were
riding, Joliet police officer James
Reilly and FBI Agent Michael Skeen pulled

over her brothers' car. The details of what happened next are somewhat sketchy, but it appears that Williams herself stopped to see what the problem was and told Eugene Jr. and Eugene III not to interfere with Officer Reilly's questioning of Barney. At this point, another Joliet squad car (and four other officers) arrived on the scene. According to Williams, one of these officers put Eugene Jr. in a choke hold. In order to keep things from escalating further, Williams tried to keep Eugene III from interfering with the officers' aggressive treatment of her brothers. Officer Reilly then ordered Williams herself arrested. Eugene Jr. and Eugene III were also arrested on the charge of obstructing a peace officer.

Williams was taken back to the Joliet Police Station and "unarrested" by Watch Commander Lt. George Hernandez. Hernandez told Williams to prepare an internal memo detailing what had happened, and Hernandez informed Williams that she would be released without charge pending an investigation by the Department's internal affairs unit. Pursuant to Joliet Police Department General Order 13-2, Hernandez then met with the other five Joliet officers who were on the scene in order to determine whether probable cause existed for the arrest. Apparently Hernandez thought not, since he decided not to charge Williams. Instead, he told the other five officers to prepare memos similar to the one that Williams was to write. Four of the five claimed that Williams had pushed other officers during the August 20 incident; Williams denied this and maintained that she did not in any way interfere with the arrests of her brother and nephew. Based on the officers' memos, a warrant for Williams' arrest was issued on August 24 (again on the charge of obstructing a peace officer). On February 9, 1995, Williams was tried and acquitted in Will County court. Almost exactly two years later, on February 7, 1997, she filed this Section 1983 action, which alleges that both the individual officers on the scene and the Joliet Police Department as a whole violated her constitutional rights.

Williams' sole theory against the individual officers is that their false accusations were part of a maliciousprosecution that violated her

constitutional rights. Of course, it is not enough for Williams to show that malicious prosecution is a constitutional tort. Because of the qualified immunity enjoyed by officers performing official functions, she must show that it was clearly established at the time of the defendants' conduct that a prosecution motivated by malice violated a person's Fourth Amendment rights. Crawford-El v. Britton, 523 U.S. 574, 593 (1998); Harrell v. Cook, 169 F.3d 428, 431 (7th Cir. 1999).

In Mahoney v. Kesery, 976 F.2d 1054, 1062 (7th Cir. 1992), we noted that "malicious prosecution can be . . . a step on the road to a constitutional violation for which redress is available under section 1983," but we added that "the standing of malicious prosecution as a constitutional tort is weak." Id. at 1061. Moreover, the Supreme Court held in Albright v. Oliver, 510 U.S. 266 (1994), that malicious prosecution does not constitute a direct violation of the Due Process Clause of the Fourteenth Amendment. With the due process avenue foreclosed, Williams instead looks to the Fourth Amendment's prohibition on unreasonable searches and seizures. She relies largely on Smart v. Board of Trustees of the University of Illinois, 34 F.3d 432 (7th Cir. 1994), which said (in light of Albright) that where "malicious prosecution or abuse of process is committed by state actors and results in the arrest or other seizure of the defendant, there is an infringement of liberty, but we now know that the defendant's only constitutional remedy is under the Fourth Amendment." Smart, 34 F.3d at 434.

The defendants argue that since Smart was decided on August 29, 1994--a mere five days after Williams' arrest-- the status of malicious prosecution as a constitutional tort actionable under Section 1983 was not clearly established when they acted and that they are therefore entitled to qualified immunity. Alternatively, they argue that even Smart itself merely noted that the Fourteenth Amendment is not a valid basis for a Section 1983 suit for malicious prosecution, rather than clearly establishing that such conduct is actionable under the Fourth Amendment.

We need not resolve what, if anything, Smart clearly established since the parties' emphasis on the events before and on August 24, 1994, misses the point. August 24 was the day when Williams was arrested for the second time. To the extent that she complains about the officers' conduct prior to and during the time of her arrest, her complaint amounts to an allegation of unlawful arrest, not malicious prosecution. But since the statute of limitations in this Section 1983 suit is the two-year Illinois limitations period for personal injury actions, Northen v. City of Chicago, 126 F.3d 1024, 1026 (7th Cir. 1997), her unlawful arrest claim would be time-barred because it was brought after August 24, 1996. We have said many times that a Section 1983 plaintiff may not avoid the limitations period imposed on a false arrest claim by recharacterizing it as a malicious prosecution action. Sneed v. Rybicki, 146 F.3d 478, 481 (7th Cir. 1998); Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996).

As far as the officers go, that leaves only their allegedly false trial testimony as a basis for a malicious prosecution claim. Several of our cases have suggested that misconduct following arrest can give rise to a malicious prosecution claim against police officers that is distinct from an unlawful arrest theory. See, e.g., Sneed, 146 F.3d at 481; Reed, 77 F.3d at 1053-54. See also Washington v. Summerville, 127 F.3d 552, 560-61 (7th Cir. 1997) (Rovner, J., concurring in part and dissenting in part). This, however, is not such a case. Williams' own brief focuses exclusively on the unlawful conduct of her police department colleagues from August 20 through her August 24 arrest. It does not discuss either the officers' conduct at the trial or the state of the law in February 1995. Williams has thus waived any arguments relating to this alternate theory. International Union of Operating Engineers v. Rabine, 161 F.3d 427, 432 (7th Cir. 1998); Ricci v. Village of Arlington Heights, 116 F.3d 288, 292 (7th Cir. 1997).

Williams also seeks to hold the City of Joliet liable for the allegedly malicious prosecution instigated by its police department. Here, too, the hurdle is high, since under Monell v. Department of

Social Services of the City of New York, 436 U.S. 658 (1978), municipalities are not vicariously liable for their employees' constitutional torts. Instead, Williams must show that her arrest and prosecution resulted from a municipal policy of violating citizens' constitutional rights. Id. Her first theory is that Joliet had a policy of not advising citizens of their rights as required by Miranda v. Arizona, 384 U.S. 436 (1966). It is unclear precisely how, if at all, any Miranda violation is connected to a malicious prosecution in which no post-arrest statement is introduced. We need not pursue that point, however, since Joliet Police Department General Order 89-10 requires that subjects of internal investigations be advised of their rights. Other than her own case, Williams presents no evidence of a practice of deviating from General Order 89-10. Ordinarily, one incident is not sufficient to establish a custom that can give rise to Monell liability. Calusinski v. Kruger, 24 F.3d 931, 936 (7th Cir. 1994). Williams makes no argument that hers is an extraordinary case that should prompt us to depart from this rule, so the district court was correct to dismiss this claim.

Williams' other argument against Joliet is that the city should be liable for its failure to train its officers in the conduct of internal investigations. City of Canton v. Harris, 489 U.S. 378 (1989), suggests that a failure to train can serve as a basis for municipal liability under Section 1983, but only if that failure is tantamount to "deliberate indifference" toward the constitutional rights of citizens. Harris, 489 U.S. at 388. There is nothing whatsoever in the record that suggests that the Joliet Police Department was aware of a substantial risk that its officers would undermine one another's constitutional rights during the course of internal investigations, so this claim, too, was properly dismissed.

Because Williams' malicious prosecution arguments on appeal amount to an attempt to avoid the two-year limitations period applicable to her Section 1983 claims and there is no evidence that justifies imposing liability on the City of Joliet itself, the judgment of the district court is Affirmed.