**John CORCORAN, Plaintiff,**

v.

**Paul FLETCHER, in his individual capacity, and City of Montebello, Defendants.**

**No. 98–5817 WJR.**

United States District Court, C.D. California.

July 26, 2001.

---

Stan Blumenfeld, Austen L. Parrish, O'Melveny & Myers LLP, Los Angeles, CA, for plaintiff.

Mike Capizzi, Cynthia Blaylock, Jones & Mayer, Fullerton, CA, for defendants.

ORDER RE (1) DEFENDANTS' MO-
   TION RE: QUALIFIED IMMU-
   NITY; AND (2) PLAINTIFF'S
   MOTION RE: DECLARATORY
   RELIEF/UNCONSTITUTIONAL
   POLICY

REA, District Judge.

In 1998, Plaintiff John Corcoran ("Corcoran") filed this lawsuit against Defendant Paul Fletcher ("Fletcher") and the City of Montebello (the "City") alleging a violation of Civil Rights pursuant to 42 U.S.C. § 1983. More specifically, Corcoran claimed that both Fletcher and the City had violated his Fourth Amendment rights to be free from unreasonable searches and seizures.

Corcoran's complaint contained four causes of action. The first claim was directed at Fletcher, in his individual capacity, for allegedly violating Corcoran's civil rights by detaining him without reasonable suspicion and arresting him without probable cause. The remaining three claims were all directed against the City. One complained of the City's alleged failure to properly train its officers and another for the City's alleged maintenance of a policy or practice that caused or was the moving force behind the alleged unconstitutional arrests. Finally, Corcoran requested declaratory relief in the form of an injunction proclaiming the policy at issue to be unconstitutional as a matter of law.

Defendants challenged the validity of two of these claims by way of a Motion for Summary Judgment. At that same time, Fletcher asserted his qualified immunity defense. But on March 26, 2001, this Court denied Defendants' Motion and reserved judgment on the qualified immunity defense. This Court concluded that it could not, in light of well-settled Seventh Amendment law, see *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir.1997), resolve factual disputes at this early stage in the proceedings. Accordingly, the Court allowed the matter to proceed to trial.

After an approximately two week trial, the jury in this case returned a verdict in Corcoran's favor on all claims. Additionally, the jury awarded punitive damages after finding that Fletcher had been either malicious or reckless in regard to Corcoran's Fourth Amendment rights.

But two issues nevertheless remain. First, this Court must, as it expressed it would, consider the issue of whether Fletcher should be held to be immune from liability pursuant to the law of qualified immunity. Second, this Court must determine whether Corcoran is entitled to a declaration that the City's policy at issue

in this case is unconstitutional as a matter of law. These issues will be examined in turn below.

## I. Officer Fletcher's Qualified Immunity Defense

Officer Fletcher, to the extent he is being sued in his individual capacity for violating 42 U.S.C. Section 1983, has, on more than one occasion, raised the affirmative defense of qualified immunity. But in each instance, this Court has instructed Fletcher that this matter must be held over pending the resolution of trial.

■ The rationale underlying this Court's repeated insistence that qualified immunity be put off until the trial was resolved is relatively simple: the facts were, until the end of trial, in controversy. In other words, this Court concluded that if the undisputed facts were as related by Fletcher, then this Court could have readily concluded that Officer Fletcher was entitled to qualified immunity. But the facts were disputed; thus, issues of credibility belong to the trier of fact. The Seventh Amendment to the Constitution so requires. *Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir.1997). Now that the factual record has been fully developed and the jury has resolved underlying questions of fact, the question of whether Fletcher should be shielded from liability by his invocation of qualified immunity is ripe for resolution.

### A. *Legal Standard*

■ The doctrine of qualified immunity insulates government agents against the burdens of a trial and personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Therefore, the existence of immunity in a particular case should be decided as early as possible in the litiga-

tion—ideally, well in advance of trial. *See Hunter v. Bryant*, 502 U.S. 224, 225, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam); *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir.1992).

■ It is well understood that Government officials ordinarily enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727; *see also Behrens v. Pelletier*, 516 U.S. 299, 312, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (describing *Harlow's* standard as one of "objective legal reasonableness"). "A public official is not entitled to qualified immunity when the contours of the allegedly violated right were sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir.1996) (alterations in original) (citation and internal quotations omitted). In light of the foregoing, it is clear that under Ninth Circuit precedent, qualified immunity is presumed unless refuted by the plaintiff. *See Jeffers v. Gomez*, 240 F.3d 845, 853 (9th Cir.2001).

■ Determining whether a public official is entitled to qualified immunity, then, "requires a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir.1995) (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871–72 (9th Cir.1993)). This standard " 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter*, 502 U.S. at 229, 112 S.Ct. 534 (quoting *Malley v. Briggs*,

475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

### B. *Analysis*

#### 1. *Clearly Established Law*

"[W]hether the law was clearly established ... is a pure question of law for the court to decide." *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir.1994). For a right to be "clearly established," its "contours ... must be sufficiently clear that [at the time the allegedly unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Id.* at 1361 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)) (alteration in original). Although plaintiffs need not show that the very action challenged was previously held unlawful, they must show that " 'in the light of pre-existing law the unlawfulness must be apparent.' " *Id.* (quoting *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034, 97 L.Ed.2d 523).

But this Court need not revisit this issue. That is, this Court will not consider again whether the law governing the officer's conduct is reasonably established. As this Court has already held as a matter of law on Defendant's Motion for Summary Judgment, it is. Therefore, the only remaining issue with respect to the qualified immunity inquiry is whether a reasonable official in Officer Fletcher's place could have believed his conduct was lawful. This Court answers this question in the negative.

#### 2. *Objective Reasonableness*

In a civil rights action in which qualified immunity is asserted, the reasonableness of an officer's conduct comes into play both "as an element of the officer's defense" and "as an element of the plaintiff's case." *Katz v. United States*, 194 F.3d 962, 967 (9th Cir.1999). For this reason, many courts have struggled with the application of qualified immunity. On one hand, qualified immunity, as stated above, is immunity from *suit*. But on the other hand, in cases in which the facts are disputed, it is improper for a court to resolve factual disputes by weighing evidence and making credibility determinations at the pre-trial stage. Accordingly, in many cases parties assert their qualified immunity defense at the close of the presentation of evidence but before the jury, in other cases, it is not until after the jury has reached a verdict, and still in other cases, the parties assert their defense at every opportunity.

The latter of the three possible scenarios occurred in this case. Fletcher asserted the defense of qualified immunity at the pre-trial phase, during the trial, and after the verdict. Now this Court must consider whether Fletcher is entitled to the defense. This Court holds that he is not.

To determine whether an officer is entitled to the defense of qualified immunity when the existence of probable cause to arrest is in issue, the question asked is whether a hypothetical officer reasonably could have believed that probable cause to arrest existed based upon the facts and circumstances known to the defendant at the time of the incident. To resolve the merits of an unlawful arrest claim, the question is whether a reasonable officer could have believed that there was probable cause to arrest under the circumstances. Because of this parity, the Ninth Circuit, as well as other federal appellate courts, has repeatedly held that the inquiry as to whether officers are entitled to qualified immunity for an arrest without probable cause is the same as the inquiry on the merits of the unlawful arrest claim. *See Katz*, 194 F.3d at 968 (resolving an apparent intracircuit conflict between excessive force cases that equated the inquiry on the merits with the qualified immuni-

ty analysis and other cases that suggested the two lines of inquiry are distinct); *see also Mahoney v. Kesery,* 976 F.2d 1054, 1057–59 (7th Cir.1992) (Posner, J.) (holding that where facts are disputed the qualified immunity inquiry merges with the underlying merits of the case). In fact, following this logic, the Seventh Circuit recently explained that purpose of *Harlow*'s good-faith or qualified immunity scheme for most public officers—notably, police officers—is (unlike the absolute immunity of judges, prosecutors, and a few other officials) to protect public officers against legal uncertainty. *See Northen v. City of Chicago,* 126 F.3d 1024, 1027 (7th Cir. 1997), *cert. denied,* 523 U.S. 1023, 118 S.Ct. 1306, 140 L.Ed.2d 471 (1998) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). Thus, where the legal concept of probable cause has remained unchanged since the arrest and the only issue is whether the defendant had probable cause to arrest this plaintiff in these circumstances, the Seventh Circuit posited that "it is difficult to see what purpose would be served by a defense of immunity when conceived as protection against changes or uncertainty in the law; and so the concepts of probable cause and official immunity could be thought in such a case to merge." *See id.*

But despite the difficulty in applying qualified immunity, one thing is certain and, for the purposes of this case, dispositive. That is, where essential historical facts concerning what an official knew or did are in dispute, "it is clear that these are questions of fact for the jury to determine." *Headwaters Forest Defense v. County of Humboldt,* 240 F.3d 1185, 1207 (9th Cir.2000) *see also Katz,* 194 F.3d at 969. Put simply, "the jury, not the judge, must decide the disputed 'foundational' or 'historical' facts that underlie the determination." *Acosta v. City and County of San Francisco,* 83 F.3d 1143, 1147 (9th Cir.1996).

Here, the jury apparently believed Corcoran's version of the facts. Indeed, perusal of the jury instructions shows that the jury was asked to consider whether the officers' actions were reasonable:

Mere suspicion, common rumor, or even strong reason to suspect are not enough to constitute probable cause for arrest....

Probable cause exists where the facts and circumstances within the officers' knowledge and which the officers have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person who is placed under arrest....

The burden is on the defendant to prove by a preponderance of the evidence ... that the warrantless arrest was reasonable and, hence, legal.

*See generally,* Jury Instructions Read by Court, 6/5/01.

Furthermore, the special verdicts (i.e., the Punitive Damages Special Verdict Form) indicate that the jury not only found there was no probable cause for Corcoran's arrest, but that Fletcher was either "malicious or in reckless disregard with of Corcoran's constitutional rights" and so merited punitive damages. *See Larez v. Holcomb,* 16 F.3d 1513, 1518 (9th Cir.1994) (observing in context of faulty jury instruction that the jury's award of punitive damages "provides a strong indication that the jury did not find the [officer's] account persuasive," and citing *Benigni v. City of Hemet,* 879 F.2d 473, 480 (9th Cir.1988), for the proposition that "the jury's award of punitive damages indicated that the jury found the police officer's conduct unreasonable"). Indeed, it would be entirely inconsistent with the jury's clearly supportable finding that Fletcher was either malicious or reckless in the

denial of Corcoran's rights to then conclude that his conduct is entitled to immunity. *See Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th cir.1992) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity.").

Therefore, because the jury instructions demonstrate that the jury must have determined that Officer Fletcher not only lacked probable cause to arrest Corcoran but did so unreasonably, and because this Court holds that the jury's determination was sufficiently supported by the record, this Court hereby denies Fletcher's assertion of qualified immunity.

## II. Declaratory Relief

In addition to the three claims presented to the jury, Corcoran requests declaratory relief. More specifically, Corcoran seeks a declaration that the City's policy of authorizing a peace officer to arrest without probable cause pursuant to a citizen's arrest is unconstitutional.

### A. *Legal Standard*

■■■■ Granting declaratory relief is committed to the sound discretion of the trial court. *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984); *Doe v. Gallinot*, 657 F.2d 1017, 1024 (9th Cir. 1981). But "[w]hether that discretion should be exercised in a given instance is subject to more searching review by an appellate court than the 'abuse of discretion' standard." *Doe*, 657 F.2d at 1025.

■■■■ The courts have generally recognized two criteria for determining whether declaratory relief is appropriate: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw–Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir.), *cert. denied*, 385

U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966) (quoting Borchard, *Declaratory Judgments* 299 (2d ed.1941)).

A court declaration is a message not only to the parties but also to the public and has significant educational and lasting importance. *See Bilbrey*, 738 F.2d at 1471. Specifically, courts have concluded that a declaration can serve as "another marker along the road to implementation of Fourth Amendment rights." For example, courts that have held school searches unconstitutional have generally found it appropriate to enter declaratory relief even where defendants may also have been separately held entitled to immunity from damages. *See Bellnier v. Lund*, 438 F.Supp. at 55. *See' generally Pope v. Chew*, 521 F.2d 400, 406 (4th Cir.1975).

Finally, courts considering the issuance of an injunction often consider whether the controversy "is of sufficient immediacy and reality to warrant the issuance" of declaratory relief. *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

### B. *Analysis*

■■■■ The jury in this case found that the City of Montebello has a policy, custom or practice that permits officers to arrest persons pursuant to a citizen's arrest without probable cause to believe the person has committed a crime. This finding was supported by an array of evidence. Indeed, each and every member of the Montebello Police Department who took the stand testified that they accept and take physical custody of citizen's arrest without regard to probable cause. In fact, Captain Werner, who is the senior police department official called to speak authoritatively on the City's policy, explained that the

officer should take the person into custody where the accuser has made a citizen's arrest even if the officer is certain that the arrest is unlawful. Similarly, former Captain Juliano testified that an officer may take a citizen to jail based upon a citizen's arrest despite a known lack of probable cause to arrest. Now, Corcoran asks this Court to declare that this policy is unconstitutional.

■ It is well-settled, and beyond re-examination, that a police officer must, save a few narrow exceptions not applicable to this case, have either an arrest warrant or probable cause to arrest. In fact, recently the Ninth Circuit stated that "[u]nsurprisingly, it is clearly established that an arrest without probable cause violates a person's Fourth Amendment rights." *Knox v. Southwest,* 124 F.3d 1103, 1107 (9th Cir.1997). The Supreme Court has recognized the requirement for probable cause to support a warrantless arrest for many years. *See Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925); *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Therefore, it follows that any policy that allows the police to substitute a citizen's arrest for probable cause to arrest must be stricken as unconstitutional. This policy makes no mention of the probable cause requirement and includes no express directive that the police have probable cause to arrest notwithstanding the fact that the accuser has made a citizen's arrest. A pre-warrantless arrest finding of probable cause is a requirement. Any city policy, like the Montebello policy in this case, that permits the delegation of this nondelegable duty would facilitate the private abuse of criminal charges and would amount to a substitution of a experienced officer's judgment for that of an ordinary citizen. In other words, any other result in this case would permit a police officer to simply close his eyes to the facts and essentially impute to all private citizens the knowledge that police officers gain only from countless hours of on the job experience. In short, the City's policy permits for the wholesale abandonment of Fourth Amendment requirements, and therefore, is hereby declared unconstitutional.

IT IS SO ORDERED.